# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVERNU TECHNOLOGY, LLC : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | NO. 10-2635 |
| v. : | |
| : | |
| ROHM AND HAAS COMPANY, : | |
| : | |
| Defendant. : | |

Diamond, J.                                                                                              August 26, 2010

## MEMORANDUM

Defendant Rohm and Haas has challenged diversity jurisdiction in this dispute with Plaintiff EverNu Technology. At issue is the citizenship of Defendant, a subsidiary of the Dow Chemical Company. Because I agree that Rohm and Haas's principal place of business is in Philadelphia, I will dismiss for lack of subject matter jurisdiction.

**I.      BACKGROUND**

EverNu Technology is a Pennsylvania limited liability company founded by Dr. Manhua Lin, formerly a scientist at Rohm and Haas. *(Doc. No. 1.)* After Dr. Lin left Defendant's employ in 1999, the company alleged that she had absconded with hundreds of its confidential files and disclosed trade secrets in breach of her termination agreement. *(Doc. No. 5 at 4.)* After conducting a ten day hearing, the Montgomery County Common Pleas Court granted Rohm and Haas's request for a preliminary injunction. *(Id.)* In 2008, the Court determined that Dr. Lin had failed to comply with its orders, and permanently enjoined her "from using, disclosing or divulging directly or indirectly any information that Rohm and Haas Company considers

1

confidential or a trade secret." See Rohm and Haas Co. v. Lin, 992 A.2d 132, 141 (Pa. Super. Ct. 2010) (citing the lower court's opinion). The Pennsylvania Superior Court affirmed, vacating on overbreadth grounds only that part of the permanent injunction restraining unidentified third parties. Id. at 148, 151. The Court denied Dr. Lin's petition for reargument. Rohm and Haas Co. v. Lin, 2010 Pa. Super. LEXIS 1604 (Pa. Super. Ct. May 7, 2010).

On June 2, 2010, EverNu filed the instant Complaint, invoking diversity jurisdiction and alleging abuse of process by Rohm and Haas in the state court litigation. See 28 U.S.C. § 1332; Doc. No. 1. On June 28, 2010, Defendant moved to dismiss, arguing that there is no diversity because Rohm and Haas is a Pennsylvania company with its principal place of business in Philadelphia. *(Doc. No. 5.)* In opposing the Motion, EverNu alleges that Rohm and Haas's principal place of business is Midland, Michigan, the location of its sole shareholder and corporate parent, the Dow Chemical Company. *(Doc. No. 8.)*

On July 8, 2010, I Ordered the Parties to conduct expedited discovery on the jurisdictional issue and denied Defendant's Motion without prejudice, noting that it could renew the Motion at the conclusion of expedited discovery. *(Doc. Nos. 9,10.)* The Parties subsequently submitted additional memoranda on jurisdiction. *(Doc. Nos. 15, 17.)* Included in Defendant's renewed submissions were four affidavits setting out in detail Rohm and Haas's operational autonomy and the location of its executive management. *(Doc. No. 15, Ex. 1-4.)* In its supplemental filing, Plaintiff focused entirely on the "Authorization Policy," by which Dow reviews and controls Defendant's activities. *(Doc. No. 17 at 1-2.)*

On August 13, 2010, I conducted an evidentiary hearing. Plaintiff did not challenge any of Defendant's factual representations. Rather, Plaintiff emphasized portions of the deposition

testimony of Defendant's corporate designee, and called as on cross-examination Dennis O. Wilson – Defendant's Assistant General Counsel, whose testimony I credit.

## II. LEGAL STANDARDS

### A. Jurisdiction

In deciding a motion to dismiss for lack of subject matter jurisdiction, I must accept Plaintiff's factual allegations as true and ensure that the Complaint contains necessary jurisdictional elements. Fed. R. Civ. P. 12(b)(1); Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n. 4 (3d Cir. 2002). In conducting this review, I am not obligated to make inferences in Plaintiff's favor. Halstead v. Motorcycle Safety Found., Inc., 71 F. Supp. 2d 464, 468 (E.D. Pa. 1999). Rather, Plaintiff must establish jurisdiction. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005); see also Hertz Corp. v. Friend, 130 S. Ct. 1181, 1194 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it.")

### B. Corporate Citizenship

The Third Circuit has held that "[a] corporation is deemed a citizen 'of any State by which it has been incorporated and of the State where it has its principal place of business.'" Grand Union Supermarkets of the V.I. v. H.E. Lockhart Mgmt., 316 F.3d 408, 410 (3d Cir. 2003) (citing 28 U.S.C. § 1332(c) (2001)). The Supreme Court has recently held that for diversity purposes, a corporation's principal place of business is the location of its "nerve center," or "corporate brain" – "the center of overall direction, control, and coordination." Hertz, 130 S. Ct. at 1194. Usually, a corporation's nerve center will be where it maintains its headquarters, "provided that the headquarters is the actual center of direction, control, and coordination," or the location that the public considers to be "the corporation's main place of business." Id. at

3

1192-93. The Court cautioned, however, that "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." Id. at 1043-44.

A subsidiary's principal place of business is not automatically determined by the location of its parent. Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp., 461 F.2d 1140, 1142 (3d Cir. 1972) ("[A] subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business.") (internal citations omitted); see also Topp v. CompAir, Inc., 814 F.2d 830, 835 (1st Cir. 1987) ("[T]he nerve center test does not grant free license to ignore the separate corporate identity of the corporation whose citizenship is being sought.")

In the months since Hertz, courts that have sought to determine a subsidiary's principal place of business have focused on the location of day-to-day control and coordination of the company's business operations. For instance, the Southern District of West Virginia rejected the contention that a parent company's location in Michigan was its subsidiary's principal place of business:

> That significant corporate decision-making is made in Michigan and the presence of some (but not all) corporate officers in Dearborn, Michigan does not overwhelm the other evidence pointing to Wheeling [West Virginia as the subsidiary's principal place of business], such as the presence of a well-established headquarters out of which all daily operations are overseen. Second, placing the principal place of business of [the subsidiary] in Michigan would ignore the reality that [the subsidiary] is separate and distinct from its parent corporations.

Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC, 2010 U.S. Dist. LEXIS 31662 at *10 (S.D. W. Va. Mar. 31, 2010) (internal citations omitted). The Southern District of Texas similarly

rejected the suggestion that because the parent had control over corporate policy and extraordinary transactions, the parent's location was the subsidiary's principal place of business:

> Focusing on [the subsidiary] AOT, as <u>Hertz</u> requires, leads to the inescapable conclusion that AOT's principal place of business is where its sole officer and CEO—Mike Winget—implements, directs, controls, and coordinates AOT's business activities. While the [parent company] Transcor board makes major decisions and sets policies for its subsidiary AOT from Europe, the management, direction, control, and implementation of AOT's business activities are effectuated by AOT's Chief Executive Officer, Mike Winget, in Huntington Beach, California. Petitioners, who have the burden to show that jurisdiction exists, have failed to show by a preponderance of the evidence that AOT's principal place of business is not in [Texas].

<u>Astra Oil Trading NV v. Petrobras Am., Inc.</u>, 2010 U.S. Dist. LEXIS 78573 at *22 (S. D. Tex. Aug. 4, 2010).

## III. DISCUSSION

Plaintiff bases its arguments almost entirely on two documents related to Dow's acquisition of Rohm and Haas. Begun on July 10, 2008, the acquisition was completed on April 1, 2009, when, by unanimous written consent, the Rohm and Haas Board of Directors adopted an "Authorization Policy," which requires Dow's approval for certain transactions "not covered by a separate Board resolution." *(Doc. No. 17, Ex. C.)* Pursuant to the acquisition, the companies also created a "Delegation of Authority Repository," allowing Rohm and Haas to enter into transactions up to a certain dollar amount without Dow's consent or approval. *(Doc. No. 17 at 5; Hr'g Tr. at 6, 8.)* Plaintiff contends that through the Authorization Policy and the Delegation of Authority Repository, Dow dictates all of Rohm and Haas's decisions. <u>See</u> Doc. No. 17 at 1-2 (The documents comprise Dow's "ironclad corporate governance mechanism for the control,

direction, and coordination of Rohm and Haas's 'business, property, and affairs.'"). I do not agree. Plaintiff has ignored abundant evidence – the credibility of which it does not challenge – confirming that Rohm and Haas's "principal place of business" and "nerve center" remain in Pennsylvania.

With its acquisition, Rohm and Haas assumed the trade name "Dow Advanced Materials." *(Hr'g Tr. at 7, 8.)* Rohm and Haas's existence, operations, and autonomy, however, otherwise remained largely unaffected by the acquisition. Rohm and Haas remains incorporated in Pennsylvania. It has its own Board of Directors, which appoints Rohm and Haas's officers. *(Doc. No. 15, Ex. 1; Doc. No. 17, Ex. 3.)* The company files its own tax returns as "Rohm and Haas, a wholly owned subsidiary of Dow Chemical, with its principal office in Philadelphia." *(Hr'g Tr. at 8, 16.)* Rohm and Haas owns the trademarks and products that are the subject of the underlying dispute with Dr. Lin. *(Hr'g Tr. at 18.)* Rohm and Haas's top executives are based in Philadelphia. See Doc. No. 15 at 6 ("[S]everal of Rohm and Haas's leading officers . . . formerly worked for Dow in Midland, but moved permanently to Philadelphia upon their appointments as officers of Rohm and Haas.") It pays its 213 Philadelphia-based employees by Rohm and Haas check. *(Hr'g Tr. at 14.)*

Mr. Wilson testified credibly and without contradiction that the day-to-day operations of Rohm and Haas are conducted autonomously in Philadelphia, and that the company's officers seek approval from Dow in Michigan for only "exceptional" transactions. See Hr'g Tr. at 5) (Dow's approval required for extraordinary transactions "such as acquiring a business or building a new plant, things that don't occur in the ordinary course of your business."). Rohm and Haas CEO Jerome Paribere has the authority to enter into contracts valued up to $300 million without

6

securing Dow's approval. *(Hr'g Tr. at 7.)* Because the vast majority of company decisions do not rise to that level, they are made in Philadelphia. *(Hr'g Tr. at 7-8.)* For example, all the legal work, intellectual property licensing, information technology services, financial filings, and corporate governance services for Rohm and Haas and its subsidiaries are conducted in Philadelphia. *(Doc. No. 15, Ex. 1.)* Moreover, Mr. Wilson explained that in overseeing Rohm and Haas's ongoing litigation, he selects counsel without Dow's approval or permission. Indeed, he testified that he seeks Dow's approval just "one or two percent of the time." *(Hr'g Tr. at 14.)*

Plaintiff argues that because the most important policy and governance decisions are made in Midland, Rohm and Haas's "nerve center" is there. Under this reasoning, every subsidiary's "nerve center" would necessarily be the location of its parent. See Topp, 814 F.2d at 835 ("[T]he nerve center test looks for the localized nerve center from which the corporation in issue is directly run. If this were not so, every independently incorporated, wholly owned subsidiary which is part of a large conglomerate would be treated (for diversity jurisdiction purposes) as a mere division of a large company rather than a separate corporation.") Obviously, a parent will reserve to itself its subsidiary's most significant decisions. As the evidence overwhelmingly demonstrates, however, Rohm and Haas makes all other decisions in Philadelphia. In these circumstances, Rohm and Haas has an existence separate and distinct from its parent, with a "nerve center" in Pennsylvania.

## IV. CONCLUSION

EverNu and Rohm and Haas each has its principal place of business in Pennsylvania. Because the Parties are not diverse, I will dismiss this matter for lack of subject matter jurisdiction.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*
_____
**Paul S. Diamond, J.**